IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

DEC 2 2 2025

KEVIN P. WEIMER, Clerk
By: _____ Deputy Clerk

KEVIN W. HOLCOMB
1445 Monroe Drive NE, #E27
Atlanta, Georgia 30324
Plaintiff,

v.

FEDERAL NATIONAL MORTGAGE
ASSOCIATION ("FANNIE MAE")
3900 Wisconsin Avenue NW
Washington, DC 20016
Defendant.

Civil Action File No.:
1:25-cv-6406

JURY TRIAL DEMANDED

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO

## COMPEL ARBITRATION AND TO STAY PROCEEDINGS

### I. INTRODUCTION

Fannie Mae asks this Court to remove a detailed federal civil rights and retaliation case from the public judicial process and send it into a private, confidential, discovery-limited arbitration regime that it designed and imposed on its workforce in 2015 as a condition of continued employment.

For existing employees like Plaintiff, the Mutual Arbitration Agreement ("2015 Agreement") was not a bargained-for contract. It was a mid-stream, take-it-

or-leave-it mandate tied to keeping one's job, rolled out in the shadow of prior overtime and process litigation (*Roper*, *Prowant*, and *Jackson*) and immediately followed by Plaintiff's two-level demotion.

Plaintiff's claims are fact-intensive and document heavy. They depend on performance history, system and vendor data, prior litigation materials, internal ethics and "psychological safety" records, medical and leave documentation, and post-termination interference evidence, much of which is in Fannie Mae's possession or control.

Plaintiff has prepared a comprehensive chronological timeline that maps those events to specific evidence categories and custodians. See Holcomb Decl., Ex. A. During the EEOC investigation, Fannie Mae submitted a position statement that did not attach or meaningfully address key items such as his May 2024 Procedural Analysis, historical performance reviews, vendor production data, and prior litigation materials that would have corroborated his claims and undermined Fannie Mae's stated reasons for its actions.

See Holcomb Decl. ¶¶ 23–27. The 2015 Agreement's strict discovery limits, confidentiality provisions, and interaction with the Dispute Resolution Policy ("DRP") are directed at the same categories of evidence and, as applied here, function to keep those materials out of full discovery and public judicial scrutiny.

Fannie Mae's conduct also matters. It did not raise arbitration when Plaintiff

raised concerns internally, when it drafted his separation option agreement, when it submitted its EEOC position statement omitting those critical materials, or when the parties participated in EEOC mediation.

As reflected in Exhibit A, Plaintiff made four separate written pre-suit requests for resolution of his claims, yet Fannie Mae did not invoke or offer to initiate arbitration in response. Arbitration was first raised only after Plaintiff filed this lawsuit and placed his allegations, timeline, and supporting materials into a public federal forum. Fannie Mae's motion to compel arbitration is therefore best understood as the latest step in a pattern of efforts to control and limit what evidence can be seen, tested, and made part of the public record.

On this record, Defendant has not carried its burden to show that Plaintiff clearly and knowingly agreed to waive his right to pursue these statutory claims in federal court, or that any such waiver is enforceable under governing law, and the 2015 Agreement is procedurally and substantively unconscionable as applied here. The motion should be denied. In the alternative, if the Court is not prepared to deny the motion on the present record, it should order limited discovery on formation, enforceability, scope, and any alleged delegation, followed by an evidentiary hearing before deciding whether any part of this dispute can properly be sent to arbitration or stayed.

## II. BACKGROUND

## A. Plaintiff's Employment and Claims.

Plaintiff began working for Fannie Mae in 2010. Over the course of his employment, he served in roles including Team Lead and, later, Underwriter II. His Complaint alleges a multi-year pattern of discrimination, retaliation, and related misconduct that culminated in his termination on October 4, 2024, and continued through post-termination interference with his efforts to secure replacement employment and to meet his housing-related obligations.

As described in the Complaint and in Exhibit A to the Declaration of Kevin W. Holcomb ("Holcomb Decl."), Plaintiff's claims are rooted in both long-term patterns and specific inflection points: his promotions and performance reviews, a two-level demotion in 2015, the handling of his ethics and "psychological safety" activity, the treatment of his May 2024 procedural analysis of Loan Quality Connect System ("LQCS") and related processes, and post-termination interference with vendor and other opportunities. See Holcomb Decl., Ex. A.

## B. The 2015 Mutual Arbitration Agreement and Its Timing

Before 2015, Fannie Mae maintained a Dispute Resolution Policy dated March 16, 1998. For employees who were already employed when they received the 2015 Agreement, Fannie Mae provided that the DRP would continue to apply to claims asserted before the 2015 Agreement's effective date and would remain in force for non-covered claims and as a fallback regime if the 2015 Agreement were

deemed unenforceable as to a particular employee. See 2015 Agreement § 2(c).

In early 2015, Fannie Mae implemented the 2015 Agreement. On or about January 26, 2015, Plaintiff was required to certify that he had received the arbitration materials and that the 2015 Agreement would apply to him if he continued to work at Fannie Mae and was employed on or about the April 2015 effective date. See Holcomb Decl. ¶¶ 7–9; Ex. B (certification); Ex. C (internal confirmation email). Under the Agreement's own terms, for current employees the 2015 Agreement was a condition of continued employment: by remaining employed on the effective date, employees were deemed to accept it. See 2015 Agreement § 2(b).

Plaintiff did not experience the 2015 Agreement as optional. It was presented as a requirement of continued employment in an environment where refusal to certify or to comply could reasonably be understood to jeopardize his job. Plaintiff did not view his certification as a voluntary, negotiated waiver of his right to bring statutory discrimination, retaliation, and related claims in federal court. He understood it as an administrative requirement imposed by an employer on whom he depended for his livelihood. Holcomb Decl. ¶¶ 10–12.

The timing is critical. Plaintiff's timeline shows that:

- In August 2014, *Roper v. Fannie Mae* was filed.

- In October 2014, the *Roper* award was confirmed.

- On November 25, 2014, *Prowant v. Fannie Mae* was filed by nine plaintiffs.

- On January 26, 2015, Plaintiff certified receipt of the 2015 Agreement, with effectiveness tied to his continued employment on the April 20, 2015 effective date.

- In February 2015, Plaintiff received a positive performance review.

- In March 2015, his duties were diminished without a legitimate performance basis.

- On April 20, 2015, the 2015 Agreement became effective for current employees who remained employed.

- In April 2015, Plaintiff was involuntarily demoted two levels.

- On April 28, 2015, *Jackson v. Fannie Mae* was filed.

  See Holcomb Decl. ¶¶ 4–6, 13–18; Ex. A.

From Plaintiff's perspective, the 2015 Agreement sits at the front of a tightly connected sequence: prior litigation exposed systemic problems; Fannie Mae then rolled out a mid-stream arbitration policy as a condition of continued employment; shortly thereafter, Plaintiff experienced diminution of duties and a two-level demotion that he alleges were a substitute for an unlawful termination and part of a pattern that ultimately culminated in his 2024 termination.

### C. Post-2015 Pattern, Termination, EEOC Proceedings, and Withheld Evidence

Following the April 2015 demotion, Plaintiff experienced a continuing pattern

of adverse actions, including negative performance reviews, loss of opportunities, denial of protections and accommodations, and an increasingly hostile working environment. On October 4, 2024, Fannie Mae terminated his employment. Holcomb Decl. ¶¶ 19–21.

After termination, Plaintiff alleges that Fannie Mae interfered with his efforts to obtain new employment, including interference with vendor opportunities and other roles, which exacerbated his financial and housing-related difficulties. These events are described in the Complaint and in the later entries on Exhibit A. Holcomb Decl. ¶ 22; Ex. A.

Plaintiff filed an EEOC charge, participated in the administrative process, and engaged in EEOC mediation. During that investigation, Fannie Mae submitted a written Position Statement drafted by Karl Johnson, a paralegal in Fannie Mae's Legal Department. That submission did not attach or meaningfully describe (a) Plaintiff's May 2024 twenty-two-page analysis of ongoing LQCS and REV defects and vendor issues, (b) his historical performance reviews from 2010 through 2015, (c) vendor production data showing his ranking and qualifications, or (d) prior litigation materials that reflected knowledge and involvement by the same decision makers. Holcomb Decl. ¶¶ 23–27. Plaintiff was not given an opportunity to rebut that submission with these materials before the EEOC issued its determination.

Plaintiff has reviewed the Position Statement and its exhibits. His review

identified ten categories that encompass twenty-five distinct instances of contradictions, omissions, mischaracterizations, and pretext, including misstatements of his EEOC charge, distortions of his performance record, fabricated admissions, and assertions of investigative independence that are not supported by the record. Holcomb Decl. ¶ 24.

Fannie Mae and the EEOC had Plaintiff's October 2024 Statement of Events before mediation and during the investigation, yet neither the Position Statement nor its exhibits addressed the issues identified in that submission. Despite having this information, the EEOC accepted Fannie Mae's Position Statement without scrutiny and closed Plaintiff's charge without soliciting a rebuttal from him or incorporating the records he identified. Holcomb Decl. ¶¶ 25–27. These omissions created a materially incomplete and misleading record that directly influenced the EEOC's dismissal decision.

These are the same categories of evidence that Plaintiff identifies in Exhibit A as central to his claims and that are largely in Fannie Mae's possession and control. They are also the categories most affected by the 2015 Agreement's discovery limitations and confidentiality provisions. Fannie Mae's current effort to compel arbitration would have the practical effect of continuing the same pattern that occurred at the EEOC level: limiting what evidence is disclosed, restricting the ability to test its internal narrative, and keeping systemic issues away from full

judicial and public scrutiny.

The EEOC Position Statement and related separation option materials in Plaintiff's case were drafted by Mr. Johnson. Fannie Mae now offers Mr. Johnson's declaration in support of its Motion, addressing the rollout and application of the 2015 Agreement. His dual role, first as the drafter of separation and EEOC submissions that omitted key categories of evidence, and now as a declarant supporting the arbitration regime that would further limit access to that evidence, underscores the need for full transparency and discovery on arbitrability and on Fannie Mae's use of the 2015 Agreement and DRP in Plaintiff's case.

## D. Plaintiff's Pre-Suit Resolution Efforts and Defendant's Belated Invocation of Arbitration

As reflected in Exhibit A, in the months leading up to October 2025, Plaintiff made four separate written requests to Fannie Mae to resolve his claims, including wrongful termination, retaliation, and post-termination interference. In those communications, he asked for substantive discussion and resolution. Fannie Mae did not offer meaningful relief, did not address the underlying issues, and, to Plaintiff's knowledge, did not invoke or offer to initiate arbitration in response to those requests. Holcomb Decl. ¶ 31.

After Plaintiff filed this federal lawsuit, Fannie Mae's outside counsel contacted him, asserted that he is bound by the 2015 Agreement, attached his

certification and internal confirmation email, and asked him to confirm by a specified date that he agreed to have the Court move the case to arbitration. Counsel stated that, if Plaintiff agreed, they would file a joint motion asking the Court to send the case to arbitration and would send a draft of that joint motion for his review and comment.

Plaintiff declined to consent. He does not agree to have this case moved to arbitration and instead exercises his right to oppose the Motion and require Fannie Mae to meet its burden in this Court. Holcomb Decl. ¶¶ 28–30.

To Plaintiff's knowledge, related matters such as *Roper*, *Prowant*, and *Jackson* did not proceed through full discovery before resolution. That history is concerning where, as here, the claims depend heavily on internal records and communications controlled by Fannie Mae. Forcing this case into arbitration would substantially limit Plaintiff's ability to obtain and use the evidence described in Exhibit A and the Complaint and would continue a pattern in which Fannie Mae seeks to control and narrow what evidence can be seen, tested, and made part of the public record. Holcomb Decl. ¶ 32.

### III. LEGAL STANDARD

The Federal Arbitration Act ("FAA") reflects a policy favoring arbitration agreements, but that policy does not displace basic principles of contract law or invert the burden of proof. The party seeking to compel arbitration bears the burden

of showing that a valid agreement to arbitrate exists, that the dispute falls within its scope, and that any purported delegation of arbitrability is enforceable. Courts must enforce arbitration agreements according to their terms, but only where the parties actually agreed to arbitrate the claims at issue and any waiver of statutory forum rights is clear, knowing, and not unconscionable.

Under ordinary contract principles, an agreement may be unenforceable due to procedural and substantive unconscionability. Courts also retain authority to decide whether an agreement was formed, whether a party assented, and whether features of an arbitration regime render it unconscionable, particularly where a clause is imposed mid-employment as a condition of keeping one's job and significantly restricts discovery and transparency in a case dependent on internal records and systemic evidence.

## IV. ARGUMENT

### I. Fannie Mae Has Not Shown a Valid, Enforceable Agreement to Arbitrate Plaintiff's Statutory Claims

#### A. Plaintiff's Purported Assent Was Procedurally Unconscionable

For current employees like Plaintiff, the 2015 Agreement was not presented as an arm's-length, negotiable contract. It was rolled out mid-employment, in a context of ongoing litigation about overtime and process defects and expressly tied to continued employment: by remaining employed on April 20, 2015, employees

were deemed to accept the Agreement, which Fannie Mae characterizes as "a condition of employment." See 2015 Agreement § 2(b); Holcomb Decl. ¶¶ 7–12.

Plaintiff had no realistic ability to negotiate terms, carve out claims, or decline arbitration without risking his job. He was required to certify receipt and was told that the Agreement would apply to him if he remained employed on the effective date. He did not understand this certification as a voluntary, bargained-for waiver of his right to bring statutory discrimination and retaliation claims in federal court. He understood it as a requirement imposed by his employer in a setting of unequal bargaining power. Holcomb Decl. ¶¶ 10–12.

The timing reinforces the coercive nature of this arrangement. As shown in Exhibit A, Fannie Mae implemented the 2015 Agreement in January 2015, with an April 20, 2015 effective date. In February 2015, Plaintiff received a positive performance review. In March 2015, his duties were diminished. By April 2015, the Agreement had become effective for those who remained employed, and Plaintiff was involuntarily demoted two levels. Within days, *Jackson v. Fannie Mae* was filed. Holcomb Decl. ¶¶ 4–6, 13–18; Ex. A.

The message to employees was clear: continued employment was contingent on accepting a new, mandatory arbitration regime drafted exclusively by Fannie Mae, implemented at a time when it faced exposure in related litigation, and followed immediately by adverse changes to Plaintiff's role. That is not meaningful

choice or free, informed assent. It is a mid-stream condition imposed on a captive workforce with no realistic ability to bargain or walk away.

**B. The 2015 Agreement's Structure, Particularly Its Interaction with the DRP, Is Substantively Unconscionable In This Case**

Substantive unconscionability focuses on terms that are overly one-sided or oppressive. Several features of the 2015 Agreement, especially as applied to Plaintiff's claims, illustrate that imbalance.

First, the Agreement sharply restricts discovery. It caps document requests, interrogatories, and depositions and limits access to third-party evidence. See 2015 Agreement § 13. Plaintiff's case involves long-term patterns, system defects, vendor relationships, prior litigation, and post-termination interference, all of which require robust access to internal records and communications. Exhibit A maps those events to specific categories of performance reviews, system logs, vendor data, litigation records, ethics and "psychological safety" materials, medical and leave documentation, and communications with vendors and prospective employers. Holcomb Decl. ¶¶ 23–27, 32; Ex. A. Imposing an arbitration regime that constrains discovery in this way, in a case where the evidence is largely in Defendant's hands, is not a neutral procedural choice; it materially impairs Plaintiff's ability to prove his claims.

Second, the Agreement imposes broad confidentiality on "all proceedings,"

including depositions, discovery, pleadings, exhibits, testimony, and awards, "to the greatest extent permitted by applicable law." 2015 Agreement § 19. In a case raising systemic issues about employment practices, prior related litigation, system defects, and post-termination interference, this confidentiality provision functions to keep information out of public view and away from broader scrutiny, even while Fannie Mae benefits from the deterrent effect of imposed confidentiality.

Third, the 2015 Agreement does not operate in isolation. Fannie Mae expressly preserved its 1998 DRP as a parallel regime that continues to apply to claims asserted before the 2015 Agreement's effective date, to claims not deemed "Covered Claims," and to arbitration of otherwise covered claims if the 2015 Agreement is found unenforceable as to a particular employee. 2015 Agreement § 2(c). This layering allows Fannie Mae to argue for different regimes at different times while preserving its own flexibility. Employees, by contrast, face an intricate structure that is difficult to understand and entirely employer-designed.

These features matter in light of Fannie Mae's past conduct. In the EEOC process, Fannie Mae submitted a position statement that, to Plaintiff's knowledge, omitted or minimized central categories of evidence, including his May 2024 analysis, historical performance reviews, vendor production data, and prior litigation materials. Holcomb Decl. ¶¶ 23–27. The Agreement's discovery and confidentiality provisions would again limit Plaintiff's ability to obtain, present, and publicly test

those same materials. Taken together, this is not a neutral forum agreement. It is a structure that, as applied here, is designed and used in a way that is substantively unconscionable.

## II. Even If an Agreement Exists, Fannie Mae's Conduct Supports Waiver or Default of Any Right to Compel Arbitration

Even where an arbitration agreement exists, a party may waive or default its right to compel arbitration by acting inconsistently with that right and prejudicing the other side. Here, Fannie Mae had every opportunity to invoke arbitration earlier and did not.

Plaintiff first raised concerns internally and through ethics and "psychological safety" channels. Fannie Mae did not respond by invoking the 2015 Agreement or proposing arbitration. When it drafted Plaintiff's separation option agreement and later authored the EEOC position statement in his case, it did not tell him that his claims could only proceed in arbitration, nor did it disclose or present the key materials described above in a way that would allow full consideration.

Plaintiff filed an EEOC charge and participated in mediation. Arbitration was not raised as a condition or alternative in those proceedings. Thereafter, as reflected in Exhibit A, Plaintiff made four separate written pre-suit requests for resolution of his claims. In none of those communications, to Plaintiff's knowledge, did Fannie Mae invoke or offer to initiate arbitration. Holcomb Decl. ¶ 31; Ex. A.

Only after Plaintiff filed this public federal lawsuit, complete with a detailed Complaint and a comprehensive timeline exhibit, did Fannie Mae, through outside counsel, raise the 2015 Agreement, attach Plaintiff's certification and internal confirmation, and ask him to join a joint motion asking the Court to move the case to arbitration. Holcomb Decl. ¶¶ 28–30.

On these facts, Fannie Mae's reliance on arbitration appears as a late-stage forum maneuver aimed at keeping the same categories of evidence out of full judicial discovery and public view, rather than a consistent, timely assertion of a contractual right. Plaintiff has been prejudiced by the time and effort spent litigating in this forum, by Fannie Mae's control of key records, and by the uncertainty created by a belated attempt to remove the case from the federal docket after Plaintiff has already invested in building a public record.

### III. The 2015 Agreement Cannot Be Applied to Send All Claims in This Case to Arbitration

Even if the Court were to conclude that the 2015 Agreement is enforceable in some respect, the Agreement itself acknowledges limits. Section 6 recognizes that certain claims cannot be forced into pre-dispute arbitration under statute and that claims governed by ERISA must be resolved according to plan procedures. It also provides that administrative charges and complaints may still be filed with agencies.

Moreover, Fannie Mae's own drafting preserves the 1998 DRP for claims

asserted before the 2015 Agreement's effective date and for non-covered claims, and it contemplates that the DRP will govern arbitration of otherwise covered claims if the 2015 Agreement is found unenforceable as to a particular employee. 2015 Agreement § 2(c). Plaintiff's timeline reflects significant events and harms, including the 2015 demotion and subsequent adverse pattern, that straddle and extend beyond the April 20, 2015 effective date.

To the extent any claims in this case fall within statutory carve-outs identified in Section 6 of the 2015 Agreement that prohibit pre-dispute arbitration of particular causes of action, those claims must remain in this Court even if any other portion were sent to arbitration.

Fannie Mae's motion does not meaningfully grapple with these complexities. It seeks a blanket order compelling arbitration of "this action," without differentiating among claims, time periods, or statutory carve-outs. That is not consistent with the Agreement's own terms or with the FAA's requirement that arbitration clauses be enforced according to the actual scope of the parties' agreement.

### IV. Any Purported Delegation Clause Cannot Be Enforced on This Record.

The 2015 Agreement includes language assigning to the arbitrator disputes over interpretation, applicability, and enforceability, subject to certain exceptions.

2015 Agreement § 20. Defendant may contend that this language delegates arbitrability issues to the arbitrator.

However, a delegation clause is itself a contractual provision that must be supported by clear, knowing assent and must not be unconscionable. Where, as here, Plaintiff challenges the very formation and enforceability of the arbitration regime imposed mid-employment as a condition of continued employment, and where the delegation clause is embedded in that same regime, the Court must resolve those challenges before enforcing any delegation.

The procedural and substantive unconscionability described above applies equally to the delegation language. Plaintiff was not presented with a separate, negotiated delegation agreement. He was required to accept an employer-drafted package that combined a mid-stream arbitration requirement with restricted discovery, confidentiality, and overlapping regimes. Under those circumstances, any purported delegation cannot be enforced to insulate the 2015 Agreement from judicial scrutiny on formation, unconscionability, and scope.

### V. At Minimum, The Court Should Order Limited Discovery and an Evidentiary Hearing on Arbitrability and Should Not Stay This Case in a Manner That Rewards Delay

If the Court is not prepared to deny the motion on the current record, it should order targeted discovery confined to arbitrability issues and hold an evidentiary

hearing before compelling arbitration or staying this action.

Limited discovery should include, at minimum:

(a) production of the complete text of the 1998 DRP and all versions and amendments in effect from 1998 through 2017, including any documents explaining the reasons for the 2015 change and its effect on employees' rights;

(b) production of all communications and rollout materials concerning the 2015 Agreement that were sent to Plaintiff and to similarly situated employees, including any internal presentations, talking points, or FAQs beyond what has been selectively provided;

(c) deposition testimony under Rule 30(b)(6) from a corporate representative knowledgeable about the purpose, design, and implementation of the DRP and the 2015 Agreement, including the topics addressed in the declaration submitted by Fannie Mae paralegal Karl Johnson regarding the Agreement's rollout and application; and

(d) production of records showing how Fannie Mae has applied the 2015 Agreement in practice, including whether and how it has invoked arbitration or litigation waivers in other matters and whether it has sought to limit discovery or public access through the Agreement's confidentiality and discovery provisions.

Such discovery is necessary to evaluate the extent of procedural and substantive unconscionability, the interaction between the DRP and the 2015

Agreement, and the validity of any purported delegation clause. Once that limited record is developed, the Court can hold an evidentiary hearing and make findings on contract formation, enforceability, and scope before deciding whether any claim may properly be compelled to arbitration.

Plaintiff has already filed a Motion for Expedited Scheduling Conference and Compressed Case Schedule, based in part on concerns about delay, document control, and spoliation. Those concerns are amplified if Fannie Mae can remove this case from the federal docket and into a confidential private forum that limits discovery and public transparency.

As set forth in the Holcomb Declaration and Exhibit A, to Plaintiff's knowledge, related matters such as *Roper*, *Prowant*, and *Jackson* did not proceed through full discovery before resolution. Defendant's present effort to compel arbitration and move this case into a confidential, discovery-limited forum continues that pattern by attempting to restrict access to internal records, narrow the scope of discovery, and keep systemic issues from full judicial and public scrutiny.

Under these circumstances, a stay of proceedings that halts this case while Fannie Mae attempts to enforce a mid-stream arbitration policy would reward delay and gamesmanship. If the Court denies the motion to compel arbitration, it should deny any request for a stay and allow the case to proceed under the expedited schedule Plaintiff has requested. If the Court orders limited discovery and an

evidentiary hearing, any stay should be narrowly tailored to that process and should not halt all case activity beyond what is strictly necessary to resolve arbitrability.

## VI. CONCLUSION

Fannie Mae seeks to move this case out of a public federal forum and into a private, confidential, discovery-limited process that it designed and imposed on its workforce in 2015 as a condition of continued employment, at a time when it faced exposure in related litigation and immediately before demoting Plaintiff two levels. Plaintiff's claims depend on access to internal records, system and vendor data, prior litigation materials, ethics and "psychological safety" records, and post-termination interference evidence that are largely in Fannie Mae's hands. In the EEOC process, Fannie Mae withheld or minimized key categories of that evidence. Its current attempt to compel arbitration uses the 2015 Agreement's structure and confidentiality to achieve the same result: restricting what evidence can be obtained, tested, and made part of the public record.

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion to Compel Arbitration and to Stay Proceedings. In the alternative, Plaintiff requests that the Court order limited discovery confined to arbitrability issues, hold an evidentiary hearing on formation, enforceability, scope, and any alleged delegation, and refrain from entering any stay that would delay this case beyond what is necessary to resolve those threshold issues.

Respectfully Submitted,

Kevin W. Holcomb, Plaintiff, pro se
1445 Monroe Drive NE, #E27
Atlanta, Georgia 30324
kholcomblitigation@gmail.com
(423) 280-3300

DATED: December 22, 2025

Exhibit A

# Exhibit A (Comprehensive Chronological Timeline of Employment, Retaliation, Litigation, and Evidence)

## Plaintiff's Employment History

January 2009 – Joined LPS (Fannie Mae Contractor)

June 2009 – Promoted to Sr. Underwriter

February 2010 – Positive Performance Review

September 2010 – Joined Fannie Mae (TE)

November 2010 - Promoted to Team Lead

February 2011 – Positive Performance Review

February 2012 – Positive Performance Review

February 2013 – Positive Performance Review

February 2014 – Positive Performance Review

January 26, 2015 – Arbitration Agreement Certification

February 2015 – Positive Performance Review

March 2015 – Diminution of Duties

April 20, 2015 – Arbitration Agreement Becomes Effective

April 2015 – Involuntary Demotion (Two Levels)

February 2016 – Negative Performance Review

February 2017 – Negative Performance Review

February 2018 – Negative Performance Review

February 2019 – Negative Performance Review

February 2020 – Negative Performance Review

February 2021 – Negative Performance Review

February 2022 – Negative Performance Review

February 2023 – Negative Performance Review

February 2023 – Reviewer Support Plan

February 2023 – Hostile Oversight (Trish Watro)

2023 – FMLA Denied

2023 FMLA Caregiver Leave Denied

January 2024 – Breach of Confidentiality

February 2024 – Negative Performance Review

February 2024 – Reasonable Accommodation Denied

June 2024 – Cheating Allegation (FMethics Investigation)

September 2024 – Hostile Oversight (John Skrobot)

September 2024 – Insubordination

September 23, 2024 – Justification for Termination Drafted

October 2024 – Termination During Active Investigation and FMLA

## Key Evidence and Records

April 2014 – AJ Harger Promoted to Manager

June 2014 – Overtime Payout

July 2014 – Robin Kendrick Hired as Director

August 2014 – Roper v. Fannie Mae Filed

October 2014 – Roper Award Confirmed

November 25, 2014 – Prowant v. Fannie Mae Filed (9 Plaintiffs)

April 28, 2015 – Jackson v. Fannie Mae Filed (1 Plaintiff)

August 2015 – AJ Harger Declaration (Jackson)

June 2017 – Jackson Settled (expanded to 21 Plaintiffs)

August 2017 – Karl Johnson Declaration (Prowant)

August 2017 – Robin Kendrick Declaration (Prowant)

October 2017 – Prowant Settled (expanded to 25 Plaintiffs)

April 2019 – Loan Quality Connect and Production Metrics Changed

March 2021 – Reassigned To AJ Harger's Team

2022 – Psych Safety Toxic Workplace Confirmed

October 2023 – FMethics Acknowledges Workplace Stress

May 2024 – Operational Analysis

September 2024 – FMLA Filed

September 25, 2024 – Management Notified FMLA In-Process

September 26, 2024 – FMLA Confirmed In Process

## Exhibit A (Comprehensive Chronological Timeline of Employment, Retaliation, Litigation, and Evidence)

**Plaintiff's Employment History**

**Key Evidence and Records**

October 4, 2024 – Notified Karl Johnson of Wrongful Termination

October 6, 2024 – Fannie Mae Notified Co-workers Helping

October 16, 2024 – Statement of Facts to Fannie Mae

October 16, 2024 – Filed GCEO

October 23, 2024 – Statement of Facts to GCEO

November 7, 2024 – GCEO Files Charge/Transferred to EEOC

December 9, 2024 – Request for Resolution

January 8, 2025 – Request for Resolution

February 2025 – Robin Kendrick Re-assigned

March 2025 – Pulte Eliminated EEO

April 2025 – Mass Layoffs

May 2025 – Return-to-Office Mandate

May 14, 2025 – Refusal to Rehire

May 21, 2025 – Failed Mediation

June 2, 2025 – Investigation Memorandum

July 11, 2025 – QC Ally (Fannie Mae Contractor) Offer of Employment

July 20, 2025 – QC Ally Rescinds Employment Offer

August 10, 2025 – Request for Resolution

August 14, 2025 – Defamation Lawsuits

August 15, 2025 – EEOC Case Assigned to Investigator

September 5, 2025 – Position Statement Extension Expires

September 18, 2025 – Opus (Fannie Mae Contractor) Verbal Offer

September 19, 2025 – Position Statement Delivered 14 Days Late

September 24, 2025 – EEOC Dismisses Charge

September 25, 2025 – EEOC Issues NRTS

September 30, 2025 – Opus Confirms Intent to Hire 1:52pm

September 30, 2025 – Opus Application Declined 2:58pm

October 3, 2025 – Coworkers Eliminated

October 3, 2025 – Litigation Hold to Fannie Mae

October 24, 2025 – Pulte Promotes Jake Williamson

October 30, 2025 – Fannie Mae Ethics Eliminated

October 31, 2025 – 62 Employees Terminated

November 3, 2025 – Acting Inspector General Terminated

November 7, 2025 – Complaint Filed in Northern District of Georgia

Exhibit B

Arbitration Agreement Program
Questionnaire (2015)

| FTE Employee | Question 1 | Answer 1 | Question 2 | Answer 2 | Created By | Created |
|---|---|---|---|---|---|---|
| Holcomb, Kevin | Fannie Mae's Arbitration Agreement, dated January 21, 2015, becomes effective on April 20, 2015, for all individuals employed by Fannie Mae as of that date. I hereby certify that I have received Fannie Mae's Arbitration Agreement. | Yes | I understand that the Mutual Arbitration Agreement will apply to me if I continue to work at Fannie Mae and am employed by Fannie Mae on April 6, 2015. | Yes | Holcomb, Kevin | 1/26/2015 12:00 |

Exhibit C

**From:** Arbitration Mailbox
**To:** Holcomb, Kevin
**Subject:** Confirmation of your Certification of Receipt of Fannie Mae's Arbitration Agreement
**Date:** Monday, January 26, 2015 12:00:03 PM

Thank you. Your Certification has been received and recorded. Please print this confirmation for your records.

Exhibit D



**Frequently Asked Questions:**
**Arbitration Agreement Issued January 21, 2015**

**Q:    Why is the arbitration process changing?**

**A:**    The new arbitration process will be simpler and more efficient. Fannie Mae introduced its existing Dispute Resolution Policy ("DRP") back in 1998. Since that time, we have had the pre-litigation requirement of the DRP, where the employee/former employee must arbitrate claims as a prerequisite to going to court with the same claims. Under the DRP, a current/former employee can reject the resolution reached in arbitration (the "Award") and proceed to court, where the case would be tried again, resulting in significant duplication of effort and expense for all parties.

We are also bringing the program up to date. Fannie Mae is one of very few companies that still have non-binding arbitration. The new Arbitration Agreement brings Fannie Mae in line with the majority of companies that have arbitration programs with employees. Under the new program, the Award is final and binding on both parties, and claims covered by the Agreement must be brought on an individual basis, and not as a group or class.

**Q:    What is arbitration?**

**A:**    Arbitration is a process in which a legal claim is presented to a neutral person (an arbitrator) instead of to a judge or jury in court. The arbitrator makes a decision on the claim (the Award) after both sides present their evidence and arguments in arbitration. Arbitration is less formal than court proceedings, but the Award is final and binding on the parties.

**Q:    What does it mean that Covered Claims will be arbitrated only on an individual basis?**

**A:**    Covered Claims are legally recognized controversies and disputes that occur related to employment. Bringing a Covered Claim only on an individual basis means that both Fannie Mae and the current/former employee have agreed to bring claims on their own behalf, and not on behalf of any other individual or entity.    In making that commitment, the parties waive their rights to have claims heard as part of a class action, collective action, hybrid class/collective action, or in a representative action.

**Q:    Are unemployment and worker's compensation claims required to be arbitrated?**

**A:**    No.  Because they are administrative claims, employees can continue to file these claims directly with the appropriate agency.

**Q:    To whom does the Agreement apply and when does it go into effect?**

**A:**    It will become effective and binding on both Fannie Mae and all current employees who continue to work after it is issued and are employed at Fannie Mae on April 20, 2015.  It will apply to newly hired employees on their date of hire.

**Q:    What happens if a claim is filed in arbitration before the effective date?**

**A:**    The claim will still be covered under the existing arbitration program (the Dispute Resolution Policy).

**Q:    Do Fannie Mae and the employee have to try to resolve a dispute internally before it can be arbitrated?**

**A:**    No. Fannie Mae encourages employees to use internal channels of dispute resolution (including through HR and C&E) before arbitrating, but this is not required before initiating arbitration.  The parties can also agree to mediate a dispute even after arbitration is initiated.

**Q:    Who pays for costs of the arbitration?**

**A:**    Fannie Mae will continue to pay for the costs uniquely associated with arbitration, including the JAMS case filing, management, and administrative fees and the fees of the arbitrator.  The parties will otherwise each bear their own fees, costs and expenses for the arbitration (including those associated with evaluating/presenting Covered Claims, selecting the arbitrator, conducting discovery, utilizing experts, transcribing the proceedings, and attending hearings). Just as in court proceedings, if applicable laws allow, the party that prevails may request attorneys' fees and costs.

Exhibit E

**FannieMae**

## ARBITRATION AGREEMENT

This Arbitration Agreement (the "Agreement") between you (the "Employee") and Fannie Mae (collectively, the "parties") provides for final and binding arbitration of employment-related disputes. This Agreement sets forth the process by which any employment-related disputes between the parties are to be resolved, and also identifies the parties' rights and obligations associated with final and binding arbitration. As agreed specifically below, among other things, the parties will arbitrate their Covered Claims only on an individual basis and hereby irrevocably waive their rights to litigate Covered Claims in court.

**1.      Agreement to Arbitrate and Mutual Waiver of Right to Litigate Covered Claims in Court.**

You and Fannie Mae agree to resolve any and all claims covered by this Agreement ("Covered Claims," as defined in Section 3, below) through final and binding arbitration. Although not required before initiating arbitration, the parties acknowledge that Fannie Mae has internal dispute resolution channels, including Fannie Mae's open door policy, mediation, and access to Human Resources and Compliance & Ethics ("C&E"). **You and Fannie Mae mutually waive any rights to a trial before a judge or jury in federal, state, or local court in favor of final and binding arbitration of Covered Claims.**

**2.      Effective Date and Consideration.**

a.      If you are a Fannie Mae employee hired (or rehired) on or after January 21, 2015, this Agreement will become effective at the start of your Fannie Mae employment (the "Effective Date"). **By accepting Fannie Mae's offer of employment, you also accept this Agreement, which is a condition of employment.** You agree that your new employment, along with Fannie Mae's promise to arbitrate all Covered Claims against you, constitutes sufficient consideration for this Agreement, and that you and Fannie Mae are bound by its terms.

b.      If you are a current Fannie Mae employee when you receive this Agreement, this Agreement will become effective on April 20, 2015, if you continue to work for Fannie Mae and are employed by Fannie Mae on that date (the "Effective Date"). **By continuing to work for Fannie Mae and being employed by Fannie Mae on that date, you accept this Agreement, which is a condition of employment.** You agree that your continuing employment on and following the Effective Date, along with Fannie Mae's promise to arbitrate all Covered Claims against you, constitutes sufficient consideration for this Agreement, and that you and Fannie Mae are bound by its terms.

c.      If you are a current Fannie Mae employee when you receive this Agreement, Fannie Mae's Dispute Resolution Policy ("DRP") dated March 16, 1998 (available in CoPPeR), will continue to apply to any claims asserted by or on behalf of either party before the Effective Date. The DRP will also remain in full force and effect for any claims that are not deemed "Covered Claims" under this Agreement and for the arbitration of otherwise Covered Claims in the event an arbitrator or judge determines that this Agreement is unenforceable as to you.

**3.      Arbitration of Covered Claims.**

Except as expressly set out in Sections 5 and 6, you and Fannie Mae agree that any and all controversies, disputes, and/or claims asserted after the Effective Date that directly or indirectly arise out of, or relate to, your employment, terms or conditions of employment, or termination of employment, whether based on federal, state, and/or local laws ("Covered Claims"), shall be resolved by final and binding arbitration pursuant to this Agreement. The final decision in arbitration is hereinafter referred to as an "Award."

**FannieMae**

This Agreement survives the termination of your employment, and applies to any and all Covered Claims that are asserted by you and/or Fannie Mae on or after the Effective Date.

### 4.    No Class, Collective or Representative Actions.

You and Fannie Mae agree that all Covered Claims filed against the other will be on an individual basis.  To that end, you and Fannie Mae waive any rights to commence, to become a party to, or to participate in, any class action, collective action (such as under the Fair Labor Standards Act), hybrid class/collective action, or representative action, whether such proceeding is in a court, arbitration, or any other forum in which Covered Claims are asserted.  The parties also agree that any Covered Claim by or against you or Fannie Mae shall be heard in arbitration without joinder of parties or consolidation of such claim with any other person or entity's claims.   The appointed arbitrator will have full authority to award to you and/or Fannie Mae all individualized relief that would otherwise be available in court.

### 5.    Injunctive or Other Interim Relief.

Either party may apply to the arbitrator for preliminary injunctive or other equitable relief before an Award is issued.  Prior to the appointment of an arbitrator, either party may, without waiving any remedy under this Section, seek from any court having jurisdiction, preliminary injunctive or other equitable relief necessary to protect the rights of that party.

### 6.    Right to Pursue Certain Statutory Claims and Administrative Complaints.

Notwithstanding anything to the contrary in this Agreement, the parties further agree that:  (i) claims under the Employment Retirement Income Security Act ("ERISA") must be resolved in accordance with the terms and procedures set out in the plan documents; (ii) Covered Claims do not include claims that have been specifically excluded by statute from pre-dispute arbitration agreements, *e.g.,* the Dodd-Frank Wall Street Reform and Consumer Protection Act's amendments to the Securities Exchange Act of 1934 and the Sarbanes-Oxley Act of 2002 ("SOX"); and (iii) this Agreement does not change or in any way affect your rights to file any administrative charges or complaints or to participate in administrative proceedings before any federal, state or local administrative agency. Further, to the extent that you would be required by law to file a timely administrative charge or complaint as a prerequisite to filing a claim in court, you must do the same before filing such claim in arbitration. Nothing in this Agreement changes or in any way affects Fannie Mae's right to defend itself or otherwise participate in any proceeding related to claims and/or complaints brought administratively or otherwise under this Section 6.

You understand, to the extent you wish to pursue claims after administrative proceedings have concluded (or wish to appeal an administrative decision), and those further proceedings would ordinarily be pursued in court, unless specifically excluded by statute, you must resolve those further proceedings through arbitration under this Agreement, and not in court.  Except to the extent set forth in Section 5 or this Section 6, nothing in this Section permits you or Fannie Mae to file claims in court, whether or not related to the subject matter regulated by the administrative bodies referred to above.

### 7.    Rules and Procedures.

The parties agree that JAMS (currently at www.jamsadr.com; 1-800-352-5267), an independent and neutral national arbitration service, will administer all arbitrations under this Agreement.  The arbitration (including selecting the arbitrator, conducting discovery and the hearings before the arbitrator) will be conducted under the rules and procedures contained in this Agreement, except that where no provision in the Agreement covers a particular matter, JAMS's Arbitration Rules and Procedures for Employment Disputes ("JAMS rules"), as amended from time to time, shall apply.  At any time before

**FannieMae**

the Award is issued, the parties may agree to submit the complaint to mediation. In the event of a conflict between the JAMS rules and those contained in this Agreement, this Agreement will prevail. The applicable JAMS rules can currently be found at http://www.jamsadr.com/rules-employment-arbitration.

### 8.    How to Bring a Claim in Arbitration.

You or Fannie Mae may initiate arbitration by sending a completed "Demand for Arbitration" form to JAMS. You can obtain the Demand for Arbitration form from Human Resources, C&E or from Fannie Mae's Arbitration Coordinator. When you file a Demand for Arbitration, you also must send a copy of that Demand to Fannie Mae at Arbitration_Mailbox@fanniemae.com. When Fannie Mae files the Demand for Arbitration, Fannie Mae must also send a copy of the Demand to you at your last known address.

The arbitration shall be held in the JAMS office closest to the county in which you are or were last employed as your primary place of work at Fannie Mae. This rule shall apply whether or not either party has since moved.

### 9.    Time Limit on Submission of Covered Claims.

All Covered Claims must be filed in arbitration within the statute of limitations period required by law for bringing the claim in court. In order for a Covered Claim to be eligible for arbitration, JAMS must receive the completed "Demand for Arbitration" form within the statute of limitations time period. Further, to the extent applicable law would require you to file a timely administrative charge or complaint as a prerequisite to filing your claims in court, you must do the same before filing such claims in arbitration. If either party contends that a Covered Claim was not made within the legal time limit, either party may ask the arbitrator to decide the issue before any hearing on the substance of the claim.

### 10.    Fees and Expenses.

Fannie Mae will pay all fees unique to the arbitration, such as case filing, case management, and administrative fees charged by JAMS, as well as all hourly or daily fees of the arbitrator. Fannie Mae will make all such payments to JAMS, and JAMS will in turn pay the arbitrator's fees. The parties will otherwise each bear their own fees, costs and expenses for the arbitration (including without limitation those associated with evaluating/presenting Covered Claims, selecting the arbitrator, conducting discovery, utilizing experts, transcribing the proceedings, and attending hearings). Nothing in this Agreement shall alter any prevailing-party or other fee-shifting rules that would otherwise apply outside the context of arbitration.

### 11.    Representation.

The parties may have an attorney or other representative, at their sole expense, present during any phase of arbitration.

### 12.    Arbitrator Selection and Replacement.

For each arbitration under this Agreement, the parties may mutually select one arbitrator from among five qualified arbitrator candidates identified by JAMS. For every panel of five arbitrators provided by JAMS, JAMS must offer a minimum of three retired federal or state court judges. Each of the five arbitrators proposed by JAMS will have the following minimum qualifications:

- Licensed attorney or former/retired judge in good standing;
- Minimum of ten years' experience in legal and/or judicial practice; and

**FannieMae**

- Substantial employment law experience.

After receiving the completed "Demand for Arbitration" form, JAMS will prepare and submit, to the Employee and Fannie Mae, a list containing five arbitrator candidates who have the qualifications stated above, together with their resumes or biographical summaries. Within ten calendar days after JAMS sends the list of arbitrator candidates (if the parties have not already mutually agreed and notified JAMS of their selection of one of the arbitrators from the list) each party must strike up to two names from it, rank the remaining three arbitrator candidates in order of preference, and return the list to JAMS. If there is more than one candidate remaining after the parties' strikes, JAMS will appoint as arbitrator the one with the highest total ranking by the parties. If, for any reason (strikes, recusals, etc.), JAMS is unable to appoint an arbitrator from the list, a second list of arbitrator candidates will be presented to the parties by JAMS, and JAMS/the parties will repeat the same strike and rank process as set forth above. If a party fails to send JAMS their strikes/ranks within the required time, JAMS will assume that the party has accepted all of the arbitrator candidates on the list. If, for any reason, the arbitrator is unable to fulfill his or her duties, a successor arbitrator will be chosen by this same procedure.

## 13.    Exchange of Information.

You and Fannie Mae each will be entitled to obtain non-privileged information relevant to the Covered Claims (including documents and testimony) from the other prior to the final evidentiary hearing to ensure a full and fair hearing on the dispute, through informal exchange, and/or as follows:

a.    Each party may issue up to 30 document requests seeking a reasonable number of non-privileged documents relevant to the Covered Claims asserted;

b.    Each party may make one request that the other party answer up to 25 (including subparts) interrogatories (or questions) regarding non-privileged information relevant to the Covered Claims asserted;

c.    Each party may take up to three fact witness depositions requiring non-privileged testimony relevant to the Covered Claims asserted. Each such deposition shall last no more than seven hours, excluding breaks. As one of the three depositions, you may choose Fannie Mae as the deponent and describe with reasonable particularity the matters for examination. If you designate Fannie Mae, Fannie Mae will select the appropriate individual(s) to provide testimony. However, without regard to the number of individuals providing testimony on behalf of Fannie Mae as its corporate designee(s), the total length of the deposition – regardless of the number of individuals testifying – will be no more than seven hours (excluding breaks);

d.    Each party may depose and obtain relevant, non-privileged documents from any expert witness designated by a party;

e.    Upon notice to JAMS and all parties, either party may request that the Arbitrator issue subpoena(s) for testimony and/or relevant, non-privileged documents from third parties to the extent allowed by the Federal Arbitration Act (FAA). If such subpoenas are issued for the attendance of a witness(es) for deposition, such witness(es) will count against the three fact witness depositions allowed under Section 13.c., above.

f.    A reasonable time before the final evidentiary hearing, the parties shall file with JAMS and exchange (1) a list of the witnesses they intend to call, including any experts; and (2) a list of exhibits intended to be used at the final evidentiary hearing.

**FannieMae**

The arbitrator, upon a showing of good cause, may order any additional discovery that is required for a full and fair hearing on the dispute while consistent with the expedited nature of arbitration. Within a reasonable time after an arbitrator is designated, the arbitrator will confer with the parties and issue a schedule of deadlines for requesting and exchanging relevant information, as set out above. The parties agree to meet and confer to try to resolve discovery disputes before involving the arbitrator.

**14.    Time Off to Participate.**

Both you and Fannie Mae must attend and reasonably participate in the arbitration, including cooperating with discovery and depositions. Fannie Mae will excuse from Fannie Mae business duties, without loss of pay or benefits, you (if you are still employed at Fannie Mae) and all employees who are needed to provide testimony or attend the final evidentiary hearing, for such time as they are needed and actively participating. You will not be subjected to any form of retaliation covered by Fannie Mae's policies or Code of Conduct as a result of initiating or participating in the processes contemplated under this Agreement.

**15.    Proceedings and the Final Evidentiary Hearing.**

Prior to or during the final evidentiary hearing on Covered Claims, either party may seek from the arbitrator the dismissal of any Covered Claim through any motion that could be brought in court, including, but not limited to, motions to dismiss or strike, or motions for summary judgment (or adjudication). At the final evidentiary hearing, both parties have the right to make opening and closing statements, offer proof and examine and cross-examine witnesses as if the matter were brought in court.

**16.    The Award.**

The Award will consist of a written statement of disposition and relief, if any, and a written statement of reasons supporting the disposition and relief, if any. The Award must be based on the facts and applicable law. The arbitrator may award any damages, attorneys' fees, expenses or other remedy to either party to the extent permitted by the underlying law, regulation, statute or equitable principle governing the claim. The arbitrator will not have authority to grant any damages, remedy or relief that is not authorized by the applicable law.

**17.    Award Is Binding on All Parties.**

The Award is binding on you (including your heirs, representatives, and assigns) and Fannie Mae (including its successors, directors, officers, or employees in their representative capacities), and neither party may later (or at the same time) bring suit against the other on any claims arising out of the same facts or circumstances that were raised, presented, or decided in the arbitration.

**18.    Enforcement of the Award.**

At the expense of the party requesting it, any court having jurisdiction over the Award may enter an order giving it the force of law. Proceedings to enforce, confirm, modify or vacate an Award will be subject to the standard of review set forth in the Federal Arbitration Act (FAA).

**19.    Confidentiality and Privacy.**

To the greatest extent permitted by applicable law and unless otherwise agreed in writing by the parties, the parties agree that all proceedings before the arbitrator will remain confidential between the parties, including but not limited to any depositions, discovery, pleadings, exhibits, testimony, or Award. The parties will inform third parties (including witnesses) necessary to the proceeding that the proceeding

**FannieMae**

is confidential, and use reasonable efforts to secure that individual's agreement to maintain such confidentiality. The requirement of confidentiality will not bar submission of the Award in proceedings to enforce, confirm, modify or vacate the Award as set forth in Section 18, above.

### 20.    Application of the FAA and Questions of Arbitrability.

This Agreement is governed by the Federal Arbitration Act (FAA) and evidences a transaction involving interstate commerce. The Agreement will, in all respects, be interpreted, enforced, and governed under the FAA. The arbitrator will resolve any disputes over the interpretation, applicability, and/or enforceability of this Agreement and the arbitrability of all other matters presented under it, except that any disputes regarding the validity and enforceability of the waiver of class actions, collective actions and representative actions in Section 4, above, may only be resolved by a judge in a civil court of competent jurisdiction, and not by an arbitrator.

### 21.    Severability.

Should any provision of this Agreement requiring that Covered Claims be brought only on an individual basis be determined invalid or unenforceable with respect to any particular claim, then that claim shall not proceed in arbitration but rather may be resolved in a court of competent jurisdiction. However, in the event that the court before whom a putative class action involving Covered Claims is pending denies class certification, the remaining individual claims must be arbitrated under this Agreement on an individual basis. In no event shall any class, collective or representative proceeding be permitted to proceed in arbitration.

Except as otherwise provided in this Section, however, if any other provision of this Agreement is held to be legally invalid or unenforceable, it will not affect the remainder of this Agreement, which will continue to be in full force and effect.

### 22.    Employment-at-Will.

This Agreement, and/or any communications or materials describing or implementing it, does not, and shall not be construed to, alter Employee's status as an at-will employee. Employee acknowledges that either Fannie Mae or Employee may end the employment relationship at any time, with or without advance notice, with or without cause.

### 23.    Modification.

Fannie Mae, consistent with the covenant of good faith and fair dealing, may discontinue or amend this Agreement at any time by giving you 90 calendar days' written notice. In that event, this Agreement will continue to apply to all claims asserted by you or Fannie Mae before or during the 90-day notice period.

### 24.    Complete Agreement.

This Agreement is the sole and complete agreement between you and Fannie Mae as to its subject matter. No failure by either party to insist on strict compliance with any part of the Agreement will be interpreted as a waiver of that part or any other part of the Agreement.