IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

DEC 22 2025

KEVIN P. WEIMER, Clerk
Deputy Clerk

KEVIN W. HOLCOMB
1445 Monroe Drive NE, #E27
Atlanta, Georgia 30324
Plaintiff,

v.

FEDERAL NATIONAL MORTGAGE
ASSOCIATION ("FANNIE MAE")
3900 Wisconsin Avenue NW
Washington, DC 20016
Defendant.

Civil Action File No.:
1:25-cv-6406 TRS

JURY TRIAL DEMANDED

**DECLARATION OF KEVIN W. HOLCOMB**

I, Kevin W. Holcomb, declare as follows:

I am the Plaintiff in this action. I make this declaration in support of my Opposition to Defendant's Motion to Compel Arbitration and to Stay Proceedings. I have personal knowledge of the facts stated in this declaration and could testify competently to them if called as a witness.

I began working for Fannie Mae in 2010. During my employment I held positions including Team Lead and, later, Underwriter II.

My Complaint describes a multi-year pattern of discrimination, retaliation, and related misconduct that culminated in my termination on October 4, 2024, and

continued through post termination interference with my efforts to obtain new employment and to meet my housing related obligations.

In 2014 and 2015, a series of cases were filed that involved overtime, classification, and process defects in the same general functional area where I worked and where I had been raising concerns since 2010. In August 2014, *Roper v. Fannie Mae* was filed. In October 2014, the *Roper* award was confirmed. On November 25, 2014, *Prowant v. Fannie Mae* was filed by nine plaintiffs. On April 28, 2015, *Jackson v. Fannie Mae* was filed by another employee.

In early 2015, Fannie Mae implemented a Mutual Arbitration Agreement. On or about January 26, 2015, I was required to certify that I had received the arbitration materials and that the Mutual Arbitration Agreement would apply to me if I continued to work at Fannie Mae and was employed on or about the April 2015 effective date.

Before 2015, I do not recall being presented with any arbitration agreement that required me to give up my right to pursue statutory discrimination, retaliation, or related claims in federal court. I understood that I would be able to have such claims heard in court if necessary, and I was never given an opportunity to negotiate or decline a binding arbitration regime.

I did not experience the arbitration agreement as optional. It was presented as a requirement of continued employment. I believed that refusing to certify receipt or

otherwise failing to comply with the arbitration policy could jeopardize my job.

I did not view my certification as a voluntary, negotiated waiver of my right to pursue statutory discrimination, retaliation, and related claims in federal court. I understood it as an administrative requirement imposed by my employer in a context where I depended on my job for my livelihood.

In February 2015, I received a positive performance review.

In March 2015, my duties were diminished without a legitimate performance basis. Responsibilities were removed and my role was reduced.

On April 20, 2015, the Mutual Arbitration Agreement became effective for employees who remained employed.

In that same April 2015 period, Fannie Mae involuntarily demoted me two levels, from a leadership level role to a lower-level underwriting position. As alleged in my Complaint, I believe this demotion was a substitute for an unlawful termination during a period when Fannie Mae was facing legal exposure in Roper, Prowant, and related matters.

On April 28, 2015, Jackson v. Fannie Mae was filed. In my view, *Roper*, *Prowant*, the January 26, 2015 arbitration certification, my February 2015 positive review, the March 2015 diminution of duties, the April 20, 2015 effective date of the arbitration agreement, my April 2015 two level demotion, and the filing of *Jackson* on April 28, 2015 form a tightly connected sequence. The arbitration agreement sits

at the beginning of that sequence and marks the start of the pattern that ultimately led to my termination and post termination harms.

Following the April 2015 demotion, I experienced a continuing pattern of adverse actions, including negative performance reviews, loss of opportunities, denial of protections and accommodations, and an increasingly hostile working environment. On October 4, 2024, Fannie Mae terminated my employment.

After my termination, I allege that Fannie Mae interfered with my efforts to obtain new employment, including interference with vendor opportunities and other prospective roles. These events are described in my Complaint and are reflected in the later entries on the timeline attached as Exhibit A to my Opposition.

Exhibit A is titled "Comprehensive Chronological Timeline of Employment, Retaliation, Litigation, and Evidence." I prepared this document based on my personal knowledge and records. It is not just a list of dates. It is a structured summary of my employment with Fannie Mae and the events leading up to and following my termination. It includes, among other things, my pre Fannie Mae background, my 2010 hire and promotions, *Roper*, *Prowant*, the January 26, 2015 arbitration certification and April 20, 2015 effective date, my February 2015 positive review, the March 2015 diminution of duties, my April 2015 two level demotion, the filing of *Jackson*, my subsequent performance reviews and complaints, internal ethics and "psychological safety" activity, the October 4, 2024 termination, EEOC

proceedings, post termination interference, and the filing of this federal action and related motions.

For each entry on Exhibit A, I included it because it corresponds to specific categories of evidence, such as performance reviews, internal communications, system data, litigation filings, ethics and "psychological safety" records, medical and leave documentation, and communications with vendors and prospective employers. To the best of my knowledge, the dates and descriptions are accurate, and Exhibit A reflects the scope of evidence that I will need full federal discovery to obtain and present. In my view, this is the body of information that Fannie Mae is attempting to restrict or remove from public judicial scrutiny by forcing this case into arbitration.

Among the entries on Exhibit A is "May 2024 Procedural Analysis." That entry corresponds to a twenty-two-page analysis I prepared and presented in May 2024 to Director Robin Kendrick and Manager A. J. Harger. In that analysis, I detailed ongoing inefficiencies, redundancies, and design flaws in the Loan Quality Connect System (LQCS) and related REV processes, showed that the same system defects had persisted since LQCS was released in 2019, and explained that the third-party vendor continued to receive payment to maintain a platform that did not function properly. I also connected those defects to issues identified in earlier overtime and process litigation and made clear that responsibility for correcting them rested with the same decision makers who had long been aware of my concerns.

After I presented the May 2024 analysis, retaliation intensified. Fannie Mae later submitted a position statement to the EEOC that, to my knowledge, did not attach or describe my May 2024 analysis, my historical performance reviews, vendor production data, or prior litigation materials that would have corroborated my claims and undermined Fannie Mae's stated reasons for its actions. I was not given an opportunity to rebut that submission or to provide the withheld materials before the EEOC issued its determination.

Exhibit B to my Opposition is a true and correct copy of my January 26, 2015 arbitration certification. Exhibit C is a true and correct copy of the internal confirmation email Fannie Mae sent acknowledging that my certification had been recorded.

After I filed this federal lawsuit, Fannie Mae's outside counsel contacted me and asserted that I am bound by the 2015 Mutual Arbitration Agreement. Counsel then sent me a written communication attaching my certification and the internal confirmation and asked that I confirm by a certain date that I agreed to have the Court move this case to arbitration. Counsel stated that, if I agreed, Fannie Mae would file a motion with the Court indicating that both parties request arbitration and that they would send me a draft of the joint motion for my review and comment before filing.

I do not agree to have the Court move this matter to arbitration. I do not

consent to arbitration of my claims. I declined to join any joint motion and instead chose to exercise my right to oppose any motion to compel arbitration and to require Fannie Mae to meet its burden in this Court.

To my knowledge, Roper, Prowant, Jackson, and another related matter did not proceed through full discovery before resolution. This history concerns me because my claims depend heavily on access to internal records and communications that are largely or entirely within Fannie Mae's control. I believe that forcing this case into arbitration would substantially limit my ability to obtain and use the evidence described in Exhibit A and in my Complaint and would reduce transparency regarding issues that have significant public interest implications.

As reflected in the entries on Exhibit A, I made four separate written requests to Fannie Mae to resolve my claims, including my wrongful termination, retaliation, and post termination interference. In addition, my EEOC charge included a mediation session that did not resolve the matter. In these efforts, I asked for a substantive discussion and resolution. Fannie Mae did not offer meaningful relief, did not address the underlying issues, and, to my knowledge, did not invoke or offer to initiate arbitration in response to those requests or during the EEOC mediation.

I am willing to participate in reasonable discovery limited to arbitrability so that the Court can evaluate whether a valid, enforceable arbitration agreement exists, whether I clearly and knowingly assented to arbitrate these claims, whether any

delegation clause is valid, and whether the agreement's scope encompasses the claims asserted in this case.

I respectfully request that the Court deny Defendant's Motion to Compel Arbitration and any request to stay these proceedings. If the Court determines that additional information is needed, I request that the Court order limited discovery confined to arbitrability issues and hold an evidentiary hearing before sending any claims to arbitration or staying this case.

I declare under penalty of perjury that the foregoing is true and correct.

Respectfully Submitted,

Kevin W. Holcomb, Plaintiff, pro se
1445 Monroe Drive NE, #E27
Atlanta, Georgia 30324
kholcomblitigation@gmail.com
(423) 280-3300

DATED: December 22, 2025